# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | |
|---|---|
| CENTRAL MUTUAL INSURANCE COMPANY, AS SUBROGEE OF BRENDA WYATT, <br><br> Plaintiff, <br><br> vs. <br><br> THERMA-STOR, LLC <br><br> Defendants. | Civil Action No. 1:21-00469-JMC <br><br> **THERMA-STOR LLC'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant Therma-Stor, LLC ("Therma-Stor"), by its attorneys, Parker Poe Adams & Bernstein LLP, by Robert H. Jordan, and Axley Brynelson, LLP, by Brian C. Hough, submits the following Reply Brief in Support of its Motion for Summary Judgment.

## **ARGUMENT**

Plaintiff contends that there is a factual dispute as to whether the whole-home dehumidifier was a permanent improvement to real property. However, the material facts concerning the Dehumidifier are not genuinely disputed. Therefore, whether the whole-home dehumidifier was a permanent improvement to the Wyatt residence is an issue the Court can decide as a matter of law. *See McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir.1992) (Explaining that summary judgment should be granted where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law). Based on the undisputed facts, the Court should apply South Carolina's 8-year statute of repose and dismiss the case.[1]

---

[1] Plaintiff does not dispute that the Dehumidifier was installed more than 8 years before the action was commenced.

1. **The Dehumidifier was ducted throughout the whole home.**

Plaintiff argues that there is a factual dispute as to whether the Dehumidifier was ducted throughout the whole home. (Dkt No. 46, Response Brief, at 8.) Plaintiff cites no fact in support of this argument. Plaintiff actually admitted the exact opposite. In response to a request for admission, Plaintiff admitted that the Dehumidifier was ducted throughout the entire house. (Dkt. No. 42-1, Plaintiff's RTA ¶ 24.) Further, the installation manual for the Dehumidifier explains that it is ducted throughout the house, either through existing HVAC ducting or through an independent system of ducts. (Dkt. No. 42-3, O'Brien Aff., ¶¶ 30-34; Exh. 1.) Additionally, Tim O'Brien, Therma-Stor's Vice President of Engineering and manager of the design engineering group at the time the Dehumidifier was designed and manufactured, also explained that the whole-home dehumidifier is ducted throughout the entire house. (Dkt. No. 42-3, O'Brien Aff., ¶ 23, Exh. 1.) There is no evidence to the contrary. This material fact is not disputed.

2. **Removal of the Dehumidifier would cause the rest of the HVAC system to fail, and would require home repairs.**

Plaintiff argues that if the Dehumidifier were removed, the HVAC system would continue to function. (Dkt No. 46, Response Brief, at 6-9.) However Plaintiff cites no fact to support of this. First, as Plaintiff's own expert explained, the Dehumidifier "was installed in the ductwork for the left-side HVAC unit." (*See* Dkt. No. 27:2, p. 5.) Plus, Mr. O'Brien attested that the Dehumidifier was designed to be integrated within a home's HVAC system. (Dkt. No. 42-3, O'Brien Aff., ¶¶ 23, 28, 35, 47, 48.) Second, Mr. O'Brien explained that separating the Dehumidifier from the rest of the HVAC system would necessarily cause the remaining HVAC units to fail due to interrupted ventilation and air flow. (Dkt. No. 42-3, O'Brien Aff., ¶ 42.) Conversely, running the Dehumidifier improves the performance and efficiency of the home's air conditioning. (Dkt. No.

42-3, O'Brien Aff. ¶ 25.) There is no evidence to the contrary. These material facts are not in dispute.

Plaintiff also argues that the Dehumidifier could be removed from the Property without creating the need for repairs to the home because it could be removed by simply unplugging it, cutting some tape and carrying it away. (*See* Dkt No. 46, Response Brief, at 3.) Plaintiff's assertion is incomplete, unsupported and grossly oversimplifies what removal would entail.

Anything can be severed. The real question is how severing the improvement affects the property. To function, the whole-home dehumidifier needs ductwork. The Dehumidifier was installed during home construction with the rest of the HVAC equipment. Plaintiff did not dispute the elaborate nature of the requisite ducting. (Dkt. No. 42-3, O'Brien Aff., ¶¶ 30-35, Exh. 1, p. 4–7.)[2] Likewise, Plaintiff's expert's pictures show how extensive the ductwork from the Dehumidifier was throughout the house. (Dkt. No. 46-1, Mason Exh. A, Pictures 18, 21, 22, 24-33.) The manual and the images demonstrate how the Dehumidifier would have been fully integrated within the entire HVAC system and the house. None of these facts are disputed.

Removal of the Dehumidifier would not leave the home intact. (Dkt. No. 42-3, O'Brien Aff. ¶¶ 37-46.) Removal would necessitate repairs to the home's opened ducts, adjustments to the hard-piping into the home's drainage system, and electrical service to address the removal of the

---

[2] Plaintiff does not dispute the contents of the manual, but Plaintiff contends the manual is inadmissible hearsay. Tim O'Brien, the manager of Therma-Stor's design engineering group throughout the design of the Dehumidifier, a mechanical engineer who worked for Therma-Stor for 27 years, used this manual in his affidavit to depict the installation procedures for demonstrative purposes. He attested that Exhibit 1 was the installation manual for the product. (Dkt. No. 42-3, O'Brien Aff., ¶¶ 7, 38.) If the manual is considered hearsay, it would be subject to the business records exception, Rule 803 (6), or as a pamphlet, Rule 803 (18) (a) and (b). And further, "materials capable of being reduced to admissible evidence at trial" can be the basis for summary judgment even though "hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment." *Graves v. Lioi*, 930 F.3d 307, 326 (4th Cir. 2019) (citations omitted).

hardwired humidistat; there would be wall repair, and dedicated ducting and wall or ceiling vents would need to be removed/repaired. (*Id*.)

In the analysis of permanence, the consequences of severing from the property must be considered. Plaintiff has not disputed or even addressed the consequences. The Court should find, based on the undisputed facts, that removal of the Dehumidifier would require substantial repairs and renovations.

### 3.     **The whole-home dehumidifier was attached to the Property permanently.**

Plaintiff argues that there is a factual dispute as to whether the whole-home dehumidifier was attached to the Property permanently. (Dkt No. 46, Response Brief, at 4-8.) In support, Plaintiff cites photographs from the scene and states, "The Dehumidifier was installed in the same fashion as the second, exemplar dehumidifier. The exemplar dehumidifier was secured to the HVAC system using tape." Plaintiff's pictures do depict ducting from the exemplar dehumidifier connected to the second the furnace, and they show that duct tape was used to seal the connection. (*See* Dkt. No. 46-1, Mason Exh. A, Pictures 28-29.)[3] Regardless of whether duct tape was or was not used to seal the connection, Plaintiff has failed to present any evidence or argument as to why sealing ducts with duct tape would be material to the analysis. Sealing gaps with duct tape is a common-sense procedure and does not change the fact that the Dehumidifier was secured via ducting to another unit in the HVAC system and was ducted throughout the entire home.

---

[3]Plaintiff did not provide Therma-Stor notice or opportunity to view the scene following the fire. (Dkt. No. 42-1, Plaintiff's RTA #14.) The Dehumidifier was disposed of in a dumpster at a dump before Therma-Stor was put on notice, and elements may have been lost. (*Id*. at 16-19.) But as Plaintiff's expert observed, the mechanical room had two HVAC systems, one on the left, and one on the right. The Dehumidifier was secured to the left HVAC system, and the exemplar was secured to the one on the right. (Dkt. 27:20, P. 5.) For summary judgment purposes, a reasonable conclusion is that the Dehumidifier was secured in the same fashion as the exemplar.

4

The material facts relating to how the Dehumidifier is attached to the home and the other HVAC equipment have not been disputed. Plaintiff did not dispute that the Dehumidifier was hard-piped to the home's drainage system. Plaintiff did not dispute that the Dehumidifier humidistat was installed in the wall and hard-wired to the home's electrical system. Plaintiff has admitted that the Dehumidifier was ducted throughout the house.

Plaintiff does not dispute that the Dehumidifier had been operating for over a decade at the time of the fire. A decade for home HVAC equipment is substantial. There is no dispute that the Dehumidifier was designed to remain stationary in one position, in one home. (Dkt. No. 42-3, O'Brien Aff., ¶¶ 48-49.) The Dehumidifier was a long-term, valuable part of the home, just like the rest of a home's HVAC system. There are no genuine disputes of material fact relating to permanence.

### 4. The Dehumidifier increased the value of Brenda Wyatt's Home.

Plaintiff argues that there is no evidence that the Dehumidifier increased the value of the Property. (Dkt No. 46, Response Brief, at 8.) The statute of repose does not require an appraisal. All that needs to be shown is that the improvement is of some value. Plaintiff did not dispute that the Dehumidifier filtered and dehumidified the air throughout the home, making the air healthier for the occupants, and preserving the home's condition. (Dkt. No. 42-3, O'Brien Aff., ¶¶ 17-21.) Plaintiff did not dispute that the Dehumidifier helped the air conditioner run more effectively. (Dkt. No. 42-3, O'Brien Aff.,¶ 25.) The value added is not genuinely disputed. Plaintiff's argument is unsupported.

### 5. The Dehumidifier was not mobile.

Plaintiff cites to *Ervin*, a case which focuses on the mobility of the product, and argues that if a conveyor system bolted down is not a permanent improvement, then a whole-house

5

dehumidifier cannot be. (Dkt No. 46, Response Brief, at 6.) The court in that case determined that the conveyor was not integral to the property, and most importantly, that the conveyor was mobile. It was designed to be moved, and it was moved. It had not just been moved, it had actually been disassembled, transported, and reinstalled in a new facility. *Ervin v. Cont'l Conveyor & Equip. Co.*, 674 F. Supp. 2d 709, 720 (D.S.C. 2009). "That fact [was] important" to the court. *Id*. at 720.

The conveyor in *Ervin* was thus akin to a portable dehumidifier. The whole-home dehumidifier is not portable. It remained at the Wyatt residence from 2008 until the 2018 fire. It was not designed to be mobile. The Dehumidifier was a stationary HVAC component connected to the whole house through a system of ducts. Accordingly, this case is not analogous to *Ervin*.

6. **It is undisputed that the Dehumidifier was an integral part of the home's HVAC system.**

Citing *Rolnick*, Plaintiff contends the Dehumidifier is akin to an attic fan, which was characterized by the court as an optional add-on. *Rolnick v. Gilson & Sons, Inc*., 260 N.J. Super. 564, 565, 617 A.2d 288, 289 (N.J. App. Div. 1992). Therma-Stor has previously addressed this case. There is no factual basis upon which to characterize the Dehumidifier as an optional add-on to an HVAC system. The facts are undisputed that the Dehumidifier is an integral part of the HVAC system. The functions of the Dehumidifier are described in detail by Mr. O'Brien, and are not refuted in any way by Plaintiff. The Dehumidifier's functions are essential HVAC functions, just like a furnace or an air conditioner performs essential HVAC functions. Plaintiff's bald assertion that the Dehumidifier is like a lamp or an optional attic fan is unsupported and does not genuinely dispute material facts.

**7. Although Tim O'Brien did not inspect the Property, his affidavit regarding the Dehumidifier design and installation procedures is relevant and admissible.**

Plaintiff contends Tim O'Brien lacks personal knowledge as to exactly how the Dehumidifier was installed, and therefore, his statements concerning proper installation are irrelevant. (Dkt No. 46, Response Brief, at 9.) Plaintiff is incorrect. Mr. O'Brien's knowledge of the characteristics of the Dehumidifier and how it was designed to be installed is relevant. The question is how much weight should be attributed to it. Moreover, Plaintiff has admitted the Dehumidifier was installed to ducting throughout the whole house. (Dkt. No. 42-1, Plaintiff RTA # 24.) If the ducting was installed without the requisite independent dedicated ducting to a room, that error would not change the fact that the Dehumidifier was connected to the house.

Furthermore, Plaintiff alleges the Fire damaged the Property. Plaintiff did not give Therma-Stor notice or an opportunity to inspect the Property until after the Dehumidifier and certain ducting were removed from the Property and disposed of in the garbage at a local dump. (Id., at ¶¶ 14-18.) As a result, the Court should find that Mr. O'Brien's affidavit concerning proper installation procedures to be relevant and admissible.

## CONCLUSION

Based on the foregoing, Defendant Therma-Stor LLC respectfully requests that the Court grant Therma-Stor LLC's motion for summary judgment, dismissing this action in its entirety with fees and costs to Therma-Stor LLC.

7

Respectfully submitted,

s/ Robert H. Jordan
Robert H. Jordan, Esq. (Fed. ID: 06986)
Email: robertjordan@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, South Carolina 29401
Phone: 843-727-2650

And

Brian C. Hough (admitted pro hac)
WI State Bar No. 1025056
E-mail: bhough@axley.com
Justin H. Lessner (admitted pro hac)
WI State Bar No. 1064634
E-mail: jlessner@axley.com
AXLEY BRYNELSON, LLP
2 East Mifflin Street, Suite 200
Post Office Box 1767
Madison, WI 53701-1767
Phone: 608-257-5661

ATTORNEYS FOR DEFENDANT
THERMA-STOR, LLC

January 11, 2022.
Charleston, South Carolina